[Cite as *In re D.G.*, 2016-Ohio-5035.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  | : | JUDGES: |
|  | : |  |
|  | : | Hon. Sheila G. Farmer, P.J. |
| IN RE D.G., JR. | : | Hon. John W. Wise, J. |
|  | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| IN RE D.G. | : | Case Nos. 2016CA00101 & |
|  | : | 2016CA00103 |
|  | : | (Cases are not consolidated) |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Stark County Court of Common Pleas, Family Court Division, Case Nos. 2015 JCV 00360 & 2015 JCV 00360 A

JUDGMENT:      AFFIRMED

DATE OF JUDGMENT ENTRY:      July 18, 2016

APPEARANCES:

For Father-Appellant:

DAVID L. SMITH
P.O. Box 20407
Canton, OH 44701

For SCDJFS- Appellee:

JAMES B. PHILLIPS
300 Market Ave. North
Canton, OH 44708

*Delaney, J.*

{¶1}   Father-Appellant appeals the May 3, 2016 judgment entry of the Stark County Court of Common Pleas, Family Court Division, granting permanent custody of D.G., Jr. and D.G. to the Stark County Department of Job and Family Services.

{¶2}   Father raises the same arguments in both appeals. The appeals are not consolidated, but for ease of discussion, we consider both appeals in one opinion.

### FACTS AND PROCEDURAL HISTORY

{¶3}   Father-Appellant is the father of D.G., Jr., born on July 7, 2011, and D.G., born on December 25, 2012.

{¶4}   Stark County Department of Job and Family Services ("SCDJFS") initially worked with Mother and Father on a non-court basis. Mother and Father had a history of substance abuse issues and manufacturing methamphetamines. Legal custodians took custody of the children by agreement in Case No. 2013 JCV 01093. SCDJFS instructed the legal custodians that Father was not permitted to have any unsupervised contact with the children.

{¶5}   SCDJFS received information that Father had been arrested for an active warrant by the Brimfield Police Department. During the traffic stop, Father's vehicle was searched and the police discovered hypodermic needles and materials for manufacturing methamphetamine. At the time of the traffic stop, the two children were in the vehicle with Father and Father's girlfriend.

{¶6}   On April 14, 2015, the children were taken into custody pursuant to Juvenile Rule 6. SCDJFS filed a complaint the same day alleging neglect, abuse, and dependency of the children and seeking temporary custody of the children. An emergency shelter care

hearing was held on April 15, 2015; neither Mother nor Father appeared. Mother was currently in prison for four years after being convicted for Complicity to Commit the Illegal Manufacturing of Drugs and Endangering Children. Her earliest expected release date was November 2, 2016. Father was incarcerated in the Summit County Jail based on his arrest. The legal custodians did not appear. The trial court found probable cause and awarded temporary custody to SCDJFS. The matter was set for pretrial on May 15, 2015. The trial court appointed a Guardian ad Litem for the children.

{¶7}   On June 19, 2015, Father was convicted of Attempted Illegal Assembly of Chemicals for the Manufacture of Drugs, a third-degree felony. Father was sentenced to two years in prison.

{¶8}   SCDJFS filed an amended complaint and the matter was set for an evidentiary hearing on July 1, 2015. An attorney was appointed for Father.

{¶9}   On July 1, 2015, evidence was presented as to Mother, Father, and legal custodians. The trial court found the children were neglected. A case plan for Mother and Father was approved and adopted.

{¶10} On October 8, 2015, a review hearing was held. The trial court found that reasonable efforts were being made.

{¶11} SCDJFS filed a motion for permanent custody on February 1, 2016. Mother, Father, and legal custodians were served with the motion by certified mail.

{¶12} The permanent custody hearing was held on May 3, 2016. Mother stipulated to the granting of permanent custody to SCDJFS. Father did not appear at the hearing. Father's appointed counsel stated Father was granted judicial release on April

11, 2016, but he had not contacted her since his release. His counsel moved to withdraw from representing Father and the trial court granted the motion.

{¶13} Dionne Armstead, the SCDJFS caseworker assigned to the children, testified at the hearing. During the pendency of the case, Father did not contact or visit with D.G., Jr. or D.G. He did not contact SCDJFS about his children. After his judicial release, Ms. Armstead believed Father was in the Oriana House in Akron.

{¶14} The children were in a foster home in Cleveland, but it was not a foster-to-adopt home. Ms. Armstead testified the children were not bonded with Mother. When shown a photograph of Father, the children recognized Father. Ms. Armstead testified D.G., Jr. was more bonded with Father than D.G., but D.G., Jr.'s only comment about Father was that he was in jail.

{¶15} Ms. Armstead testified that Summit County was awarded permanent custody of Father's two other children and the two children had been adopted. The adoptive father of the two children indicated a desire to adopt D.G., Jr. and D.G. D.G., Jr. and D.G. visited with their half-siblings and potential adoptive father once or twice a month.

{¶16} The Guardian ad Litem recommended that permanent custody be awarded to SCDJFS.

{¶17} On May 3, 2016, the trial court issued its findings of fact and conclusions of law and its judgment entry. It determined that notwithstanding the reasonable efforts of the SCDJFS, Father abandoned the children because he had no contact with the children for more than 90 days and the children could not be placed with Father within a

reasonable period of time. The trial court awarded permanent custody of D.G., Jr. and D.G. to SCDJFS.

{¶18} It is from this decision Father now appeals.

**ASSIGNMENTS OF ERROR**

{¶19} Father raises two Assignments of Error:

{¶20} "I. THE TRIAL COURT'S JUDGMENT THAT THE MINOR CHILD CANNOT AND SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE PERIOD OF TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶21} "II. THE TRIAL COURT'S JUDGMENT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY GRANTING PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

**ANALYSIS**

*I. Reasonable Period of Time*

{¶22} Father argues in his first Assignment of Error that the trial court's finding that the children could not be placed with him at this time or within a reasonable period of time was against the manifest weight and sufficiency of the evidence. He contends that while a case plan was approved and adopted by the trial court, there was no testimony about Father's participation in the case plan.

{¶23} A trial court's decision to grant permanent custody of a child must be supported by clear and convincing evidence. The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be

established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty, as required beyond a reasonable doubt, as in criminal cases." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954); *In re: Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613 (1985).

{¶24} In reviewing whether the trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54, 60 (1990); *See also, C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). If the trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. *Schiebel*, 55 Ohio St.3d at 74, 564 N.E.2d 54.

{¶25} Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." *Id*. Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984):{¶ 15} "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77

Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997); *See also, In re: Christian*, 4th Dist. Athens App. No. 04CA10, 2004–Ohio–3146; *In re: C. W.*, 2nd Dist. Montgomery App. No. 20140, 2004–Ohio–2040.

{¶26} Pursuant to R.C. 2151.414(B)(1), the court may grant permanent custody of a child to the movant if the court determines "that it is in the best interest of the child to grant permanent custody to the agency that filed the motion for permanent custody and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

* * *

In this case, the trial court made findings pursuant to R.C. 2151.414(B)(1)(a) and R.C. 2151.414(B)(1)(b). Pursuant to R.C. 2151.414(B), either finding is sufficient to meet the first prong to determine whether to grant permanent custody of the child.

{¶27} R.C. 2151.414(E) sets forth the factors a trial court must consider in determining whether a child cannot or should not be placed with a parent within a reasonable time. "If the court finds, by clear and convincing evidence, the existence of any one of the following factors, the court shall enter a finding that the child cannot be placed with the parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parent to remedy the problem that initially caused the child to be placed outside the home, the parents have failed continuously and repeatedly to substantially remedy the conditions that caused the child to be placed outside the child's home. In determining whether the parents have substantially remedied the conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

* * *

(10) The parent has abandoned the child.

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.

(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.

* * *

(16) Any other factors the court considers relevant.

{¶28} A child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days. R.C. 2151.011(C). In this case, Father does not dispute he did not visit or maintain any contact with his children for more than 90 days. Father was incarcerated while the children were in the temporary custody of SCDJFS. There is no evidence he attempted to contact his children or SCDJFS during his incarceration. After his judicial release on April 11, 2016, he made no effort to contact SCDJFS or his counsel in regards to his children. A finding of abandonment, along with a best interest finding, is sufficient to support an award of permanent custody independent of the finding that the children could not be placed with Father within a reasonable period of time. *In re N.S.,* 5th Dist. Stark No. 2016CA00044, 2016-Ohio-4627, ¶ 20.

{¶29} As to reasonable efforts, R.C. 2151.419(A)(1) requires a trial court to determine whether a children services agency "made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home." However, this statute applies only at "adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children." *In re P.S.,* 5th Dist. Licking No. 16-CA-11, 2016-Ohio-3489, ¶ 44 quoting *In re C.F.,* 113 Ohio St.3d 73, 2007–Ohio–1104, 862 N.E.2d 816. Thus, by its plain terms, the statute does not apply to motions for permanent custody brought pursuant to R.C. 2151.413, or to hearings held on such motions pursuant to R.C. 2151.414. *Id.* Therefore, the trial court was not required to make a specific finding that SCDJFS had made reasonable efforts to reunify the family. *Id.*

{¶30} In this case, the trial court made findings of reasonable efforts prior to the hearing on the motion for permanent custody. On July 1, 2015 and October 8, 2015, the trial court made findings of reasonable efforts by SCDJFS. Therefore, a showing of reasonable efforts was not required to be proven by SCDJFS or found by the trial court during the permanent custody hearing. *In re P.S.*, 5th Dist. Licking No. 16-CA-11, 2016-Ohio-3489, ¶ 46 citing *In re J.J.F.*, 5th Dist. Stark No. 2009–CA–00133, 2009–Ohio–4736.

{¶31} Father's first Assignment is overruled.

### *II. Best Interests*

{¶32} In his second Assignment of Error, Father contends the finding of permanent custody was not in the best interests of D.G., Jr. and D.G. We disagree.

{¶33} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody. *In re N.S.,* 5th Dist. Stark No. 2016CA00044, 2016-Ohio-4627, ¶ 24.

{¶34} Ms. Armstead testified during the best interest phase of the trial. The children were in a foster home. The children were doing well in foster care and were developmentally on track. The children had no medical issues.

{¶35} The children recognized their Father when they were shown a photograph of him, but the children did not display a deep bond with Father. D.G., Jr. remembered Father and said that he was in jail. D.G. did not remember Father.

{¶36} The adoptive father of the children's half-siblings was interested in adopting the children. The children visit with their half-siblings once or twice a month.

{¶37} The trial court found that any harm of severing the parental bond was outweighed by the benefits of permanency. We agree.

{¶38} Father's second Assignment of Error is overruled.

## CONCLUSION

{¶39} The judgment of the Stark County Court of Common Pleas, Family Court Division, is affirmed.

By: Delaney, J.,

Farmer, P.J. and

Wise, J., concur.